IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DENNIS GEARHART,                )   CASE NO. 1:15 CV 2110
                                )
                    Plaintiff,  )
                                )   MAGISTRATE JUDGE
         v.                     )   WILLIAM H. BAUGHMAN, JR.
                                )
COMMISSIONER OF SOCIAL          )
SECURITY,                       )   **MEMORANDUM OPINION AND**
                                )   **ORDER**
                    Defendant.  )

## Introduction

Before me[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Dennis Richard Gearhart, for disability insurance benefits and supplemental security income.[2]  The Commissioner has answered[3] and filed the transcript of the administrative record.[4]  Under the initial order[5] the parties have briefed their positions[6]  They have participated in a telephonic oral argument.[7]

---

[1] ECF # 20. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF #10 .

[5] ECF # 5.

[6] ECF # 17 (Commissioner's brief); ECF # 14 (Gearhart's brief).

[7] ECF # 21.

# Facts

**A.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Gearhart who was 52 years old at the time of the administrative hearing,[8] has a high school education and attended Tri-C Community College for one year.[9]  He lives with his sister[10] and his past relevant employment history includes warehouse worker and furniture assembler, installer, mover and truck driver.[11]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Gearhart had severe impairments consisting of asthma, emphysema, affective disorders, and alcohol/substance addiction disorders (20 CFR 404.1520(c) and 416.920(c)).[12]  The ALJ made the following finding regarding Gearhart's residual functional capacity:

> The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant must avoid all exposure to fumes, odors, dusts, gases, poor ventilation, etc.  Mentally, the claimant has the capacity to perform simple and some complex tasks.[13]

---

[8] ECF # 10, Transcript ("Tr.") at 590.

[9] *Id*. at 514.

[10] *Id*. at 518.

[11] *Id*. at 500.

[12] *Id*. at 490.

[13] *Id.* at 493.

Given that residual functional capacity, the ALJ found Gearhart capable of his past relevant work as warehouse worker and furniture assembler and, therefore, not under a disability.[14]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally Gearhart could perform.[15]

**B.     Issues on judicial review**

Gearhart asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Gearhart presents the following for judicial review:[16]

- •     Whether the ALJ erred in her determination of the plaintiff's residual functional capacity by excluding all evidence from plaintiff's treating physicians.

- •     Whether the ALJ erred in her determination of the plaintiff's residual functional capacity by devaluing evidence in which she otherwise afforded the greatest evidentiary weight.

The Court concludes that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[14] *Id.* at 500.

[15] *Id.* at 501

[16] ECF # 14 at 1.

-3-

## Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[17]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds

could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[17] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[18] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[19]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.      *The treating source and good reasons rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[20]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[21]

---

[18] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[19] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[20] 20 C.F.R. § 404.1527(d)(2).

[21] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[22] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[23]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[24] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[25] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[26] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[27]

In *Wilson v. Commissioner of Social Security*,[28] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[22] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[23] *Id.*

[24] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[25] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[26] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[27] *Id.* at 535.

[28] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[29] The court noted that the regulation expressly

contains a "good reasons" requirement.[30] The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[31]

The court went on to hold that the failure to articulate good reasons for discounting

the treating source's opinion is not harmless error.[32] It drew a distinction between a

regulation that bestows procedural benefits upon a party and one promulgated for the orderly

transaction of the agency's business.[33] The former confers a substantial, procedural right on

the party invoking it that cannot be set aside for harmless error.[34] It concluded that the

requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[29] *Id.* at 544.

[30] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[31] *Id.* at 546.

[32] *Id.*

[33] *Id.*

[34] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[35]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[36] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[37] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[38] *Blakley v. Commissioner of Social Security*,[39] and *Hensley v. Astrue*.[40]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[41] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[42] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give

---

[35] *Id.*

[36] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[37] *Id.* at 375-76.

[38] *Rogers* 486 F.3d at 242.

[39] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[40] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[41] *Gayheart*, 710 F.3d at 376.

[42] *Id.*

the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[43] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[44]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[45] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[46] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[47] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[48] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[49]

But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[43] *Id.*

[44] *Rogers*, 486 F.3d at 242.

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[50]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[51] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[52] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[53] or that objective medical evidence does not support that opinion.[54]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[50] *Id.*

[51] *Rogers*, 486 F.3d 234 at 242.

[52] *Blakley*, 581 F.3d at 406-07.

[53] *Hensley*, 573 F.3d at 266-67.

[54] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[55] The Commissioner's *post hoc* arguments on judicial review are immaterial.[56]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[57]

- the rejection or discounting of the weight of a treating source without assigning weight,[58]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[59]

---

[55] *Blakley*, 581 F.3d at 407.

[56] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[57] *Blakley*, 581 F.3d at 407-08.

[58] *Id.* at 408.

[59] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[60]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[61] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[62]

The Sixth Circuit in *Blakley*[63] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[64] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[65]

In *Cole v. Astrue*,[66] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[60] *Id.* at 409.

[61] *Hensley*, 573 F.3d at 266-67.

[62] *Friend*, 375 F. App'x at 551-52.

[63] *Blakley*, 581 F.3d 399.

[64] *Id.* at 409-10.

[65] *Id.* at 410.

[66] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

-12-

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[67]

## B.    Application of standards

Gearhart essentially contends that the RFC in this matter is flawed by not including additional limitations. In that regard, Gearhart maintains that additional mental limitations would have been required if the functional capacity opinion of his treating psychiatrist, Dr. Christian Steiner, was properly analyzed by the ALJ and then given greater weight.[68]

As noted above, the RFC in this case addresses any mental limitations by stating that Gearhart has the capacity to perform "simple, and some complex tasks."[69]  To support that conclusion, the ALJ cited the results of a 2012 consultative physical examination by Dr. Edward Butler, M.D., and a 2012 consultative psychological by Dr. Charles Misja, Ph.D.[70] The ALJ noted that Dr. Misja concluded that Gearhart "would have no problems understanding and implementing instructions, minimal problems with concentration, persistence and pace, minor to moderate problems responding to supervision and co-workers, and minor problems related to work stress."[71]  The ALJ gave "great weight" to this opinion

---

[67] *Id.* at 940.

[68] ECF # 14 at 10-11.

[69] Tr. at 493.

[70] *Id.* at 496-97.

[71] *Id.* at 497.

from Dr. Misja, stating that it was well supported by clinical findings and by the prior findings of Dr. Butler.[72]

By contrast, the ALJ observed that Dr. Steiner had recorded only "mild" symptoms of anger and poor concentration, and in 2013 had made treatment notes that Gearhart, while taking his medication, was "calmer," with normal attention, concentration, recall, good judgment and insight.[73]  The ALJ further observed that in 2014 Dr. Steiner had found in an office visit with Gearhart that his temper was under control, his thought process logical and organized, and his attention, concentration and recall were within normal limits.[74]

The ALJ assigned "little weight" to Dr. Steiner's functional opinion, noting that this opinion was not supported by the examination findings of Dr. Butler, the opinion and findings of Dr. Misja, and the previously cited treatment notes of Dr. Steiner himself.[75]  The ALJ also observed that these factors also meant that Gearhart's own complaints of depression, rage and irritability were not supported by the findings of the medical professionals.[76]  Therefore, in the end, the ALJ concluded that the mental limitations of the RFC were based on the opinions of the state agency consulting psychologist, Dr. Misja.[77]

---

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.* at 500.

[76] *Id.*

[77] *Id.*

Although the ALJ does not strictly conform to the analytical framework set forth in *Gayheart*, and even fails to explicitly identify Dr. Steiner as a treating source, the ALJ does extensively discuss both Dr. Misja's examination and findings, as well as the treatment notes of Dr. Steiner covering 2013-2014.[78]  The ALJ then further discusses with some specificity the differences between Dr. Steiner's functional opinion and Gearhart's own assertions,[79] and the areas in which Dr. Steiner's opinion is inconsistent with his own treatment notes, as well as the opinion of Dr. Misja.[80]

Gearhart's objection to the formulation of the RFC here center first on the allegation that the ALJ neglected to consider significant objective evidence in support of the opinion of Dr. Steiner, such as brain MRIs and CT scans.[81]  In that regard, Gearhart claims that this objective evidence establishes that he cannot process complex tasks, nor interact with others without limitation.[82]  Moreover, Gearhart also asserts that the ALJ "cherry-picked" Dr. Misja's findings by discounting the value of a GAF score of 50 assigned by Dr. Maija.[83]

But, as the Commissioner notes, the mere diagnosis of a medical condition, such as is found in the MRIs and CT scans, does not of itself provide an indication of the condition's

---

[78] *Id.* at 496-97.

[79] *Id.* at 497-98, 500.

[80] *Id.* at 500.

[81] ECF # 14 at 11.

[82] *Id.*

[83] *Id.* at 13.

severity, nor of any functional limitations that may be ascribed to that condition. As discussed above, the ALJ cited a number of instances where Dr. Steiner's own treatment notes from the relevant period showed a logical and ordered thought process with normal attention, concentration and recall.

Further, and consistent with the principle that mere diagnosis is not as important as any functional limit that can be shown to arise from the diagnosed condition, the Commissioner also observes that the mere assessment of a GAF score of 50 is not *per se* disabling.[84]  In addition, the ALJ here specifically noted that Dr. Misja, who assigned the GAF score, also found that despite his GAF score Gearhart would have only minimal limitations.[85]

## Conclusion

Accordingly, and for the reasons stated above, I find that the decision of the Commissioner that Dennis Richard Gearhart is not disabled is supported by substantial evidence and so is affirmed.

Dated: January 31, 2017                          s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

---

[84] *DeBoard v. Comm'r of Soc. Sec*., 211 F. App'x 411, 415 (6th Cir. 2006)(collecting cases).

[85] Tr. at 497.

-16-